# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE SEARS HOMETOWN AND OUTLET STORES, INC. STOCKHOLDER LITIGATION

)
)

CONSOLIDATED

C.A. No. 2019-0798-JTL

## OPINION ADDRESSING MOTION FOR FURTHER RELIEF

Date Submitted: December 3, 2024
Date Decided: February 13, 2025

Thomas A. Uebler, Brian V. DeMott, Terisa A. Shoremount, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; *Counsel for Cannon Square, LLC*

Ned Weinberger, Mark Richardson, Michael C. Wagner, Jiahui (Rose) Wang, LABATON KELLER SUCHAROW LLP, Wilmington, Delaware; Peter B. Andrews, Craig J. Springer, David M. Sborz, Christopher P. Quinn, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Samuel L. Closic, Seth T. Ford, Robert B. Lackey, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; David Schwartz, John Vielandi, LABATON KELLER SUCHAROW LLP, New York, New York; Carl L. Stine, Adam J. Blander, WOLF POPPER LLP, New York, New York; *Counsel for Co-Lead Plaintiffs*; Donald J. Enright, Elizabeth K. Tripodi, LEVI & KORSINSKY, LLP, Washington, District of Columbia; *Executive Committee for Co-Lead Plaintiffs.*

Michael A. Pittenger, Matthew E. Fischer, Jacqueline A. Rogers, Nicholas D. Mozal, Charles P. Wood, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; *Counsel for Defendants Edward S. Lampert, ESL Investments, Inc., ESL Partners, LP, RBS Partners, LP, Transform Holdco LLC, and Hometown Midco LLC.*

**LASTER, V.C.**

In *Cede & Co. v. Technicolor, Inc.*,[1] the Delaware Supreme Court held that when a Delaware corporation engages in a merger that gives rise to appraisal rights,[2] a former stockholder can both seek appraisal and either bring or participate as a class member in a plenary action for breach of fiduciary duty. The Delaware Supreme Court encouraged the Court of Chancery to try the plenary claim first, because the remedy in the plenary action could moot the appraisal proceeding.

The *Technicolor* decision properly focused on the issues that appeal presented; the decision did not seek to anticipate the downstream questions that would flow from its holding, including how to address differences between appraisal claimants and plenary class members at the time of judgment in the plenary action. One major difference stands out: The plenary class members received the merger consideration; the appraisal claimants did not.

Because the plenary class members have already received the merger consideration, a court sensibly frames a class-wide remedy in terms of incremental damages. That means that for a compensatory damages remedy, the court starts with

---

[1] 542 A.2d 1182 (Del. 1988). The parties made five subsequent trips to the Delaware Supreme Court as part of that long-running dispute: one in the plenary action and four in the appraisal proceeding. *See Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26 (Del. 2005); *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485 (Del. 2000); *Cede & Co. v. Technicolor, Inc.*, 684 A.2d 289 (Del. 1996); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156 (Del. 1995); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994). I generally label the decisions based on whether they were issued in the appraisal action or the plenary action. Hence *Technicolor Plenary I* or *Technicolor Appraisal II*. The first appeal involved both actions. Hence just *Technicolor*.

[2] Not all do. *See* 8 *Del. C.* § 262(b).

the judicially determined fair price at the time the merger closed, then subtracts the merger consideration that the plenary class members already received. For a rescissory damages remedy, the court does something similar. It starts with the judicially determined value of the shares at the time of judgment, uses a rate of return to bring current the value of the merger consideration that the stockholders already received, then subtracts the latter from the former. Those solutions make the class members whole while avoiding the double recovery that would result from receiving the merger consideration at closing then receiving a full damages award that includes the deal price.

Not so with the appraisal claimants. They did not receive the merger consideration, so an award of incremental damages does not make them whole. For the same reason, there is no need to avoid a double recovery through an offset, because (again) the appraisal claimants did not receive the merger consideration. For the appraisal claimants, the plenary remedy must include both the merger consideration and the incremental damages. Otherwise, the plenary action could not potentially render the appraisal proceeding moot as *Technicolor* contemplated.[3]

---

[3] That description covers most cases, but is not strictly true. An appraisal claimant could have received an amount warranting offset if the surviving corporation chose to pre-pay an amount to the appraisal claimant. *See* 8 *Del. C.* § 262(h). An appraisal claimant also could have received an amount warranting offset if the appraisal claimant litigated its appraisal claim to judgment and obtained a recovery equal to the fair value of their shares. If a plenary action generated a higher damages award, and if the appraisal petitioners opted for that remedy, they would receive only the net damages after deducting for the appraisal award.

In this case, an investment fund sought appraisal after a controller squeezed out the minority for $3.21 per share. Other stockholders pursued a plenary action. During the appraisal proceeding, the surviving corporation and its post-merger parent became insolvent. Everyone agrees that that general creditors of those entities will receive nothing. As an appraisal claimant, the fund is a general creditor.[4]

With the appraisal proceeding dead in the water, the fund opted to participate in the plenary proceeding, and the court approved a stipulated order that modified the class definition to explicitly include former stockholders who sought appraisal. The plenary action went to trial, and the court determined that a fair price at the time of the transaction was $4.06 per share. Focusing on the plenary class members who had received the merger consideration, the court awarded compensatory damages equal to their out-of-pocket loss, or $0.85 per share.

The fund had not received the merger consideration, nor any amount in the appraisal proceeding. The fund tried to get the other parties to agree that it could recover the full fair price damages award as opposed to just incremental damages. When agreement could not be reached, the fund intervened to establish its entitlement to the full fair price damages award. The defendants respond that the

---

[4] The appraisal claimant's status as a general creditor of the surviving corporation and the risk associated with that position is one reason the appraisal statute offers a meaningful rate of interest equal to "5% over the Federal Reserve discount rate (including any surcharge)." 8 *Del. C.* § 262(h). *See generally* Charles K. Korsmo & Minor Myers, *Interest in Appraisal*, 42 J. Corp. L. 109 (2016).

fund can only receive incremental damages, effectively offsetting the fund's plenary recovery to reflect merger consideration that the fund never received.

Despite the post-*Technicolor* frequency of consolidated appraisal proceedings and plenary class actions, this particular issue rarely comes up. Merger agreements invariably provide that an appraisal claimant who withdraws from an appraisal proceeding has a contract right to receive the merger consideration from the party obligated to pay it, usually either the surviving corporation or a post-merger parent. From the standpoint of the appraisal claimants, it makes no difference whether they are made whole exclusively through the plenary action or through a combination of the incremental damages award and a contractual entitlement to the merger consideration. In this case, however, it does matter: The potential sources of the merger consideration are insolvent, so the appraisal claimants cannot collect on their contractual entitlement.

Under *Technicolor*, the fund has the same entitlement to damages as the plenary class. In this case, that means the judicially determined fair price of $4.06 per share. The fund has not received any amounts that could be offset, so the fund is entitled to the full measure of the judicially determined fair price.

## I.    FACTUAL BACKGROUND

In 2005, Edward "Eddie" S. Lampert orchestrated a merger that consolidated Sears, Roebuck and Co. and Kmart Corporation under the ownership of a new entity, Sears Holdings Corporation ("Holdings"). Lampert held his investments in Holdings

in a group of funds that he controlled (the "ESL Funds"). Through the ESL Funds, Lampert owned a majority of Holdings' common stock.[5]

Sears Hometown and Outlet Stores, Inc. (the "Company") started life as a subsidiary of Holdings. In 2012, Holdings spun off the Company as a separate public entity. Lampert received a majority of the Company's common stock and ended up controlling the Company.

In 2019, the Company and Holdings entered into a merger agreement (the "Merger Agreement" or "MA"). Under the Merger Agreement, the Company merged with an acquisition subsidiary with the Company surviving (the "Merger"). Each Company share was converted into the right to receive $3.21 (the "Merger Consideration"). Transform Holdco LLC ("Parent"), a wholly owned subsidiary of the successor to Holdings, supplied the cash to pay the Merger Consideration.[6] The Company emerged as a wholly owned subsidiary of Parent.[7]

The Merger Agreement addressed the possibility of stockholders seeking appraisal by providing that dissenting shares would not be converted into the right to receive the Merger Consideration. The Merger Agreement further provided that if

---

[5] For purposes of the present motion, the distinction between Lampert and the ESL Funds is not significant, so for simplicity, this decision refers only to Lampert.

[6] MA § 2.03(a).

[7] This is an oversimplification. For a more detailed description of the transaction structure, see *In re Sears Hometown & Outlet Stores, Inc. S'holder Litig.* (*Post-Trial Opinion*), 309 A.3d 474, 503–04 (Del. Ch. 2024), *modified on reargument,* 2024 WL 3555781 (Del. Ch. July 2, 2024).

a holder of dissenting shares "fails to perfect, withdraws or otherwise loses the right to appraisal under Section 262 of Delaware Law," then "such Dissenting Shares shall automatically be converted as of the Effective Time into the right to receive the Merger Consideration."[8]

After the announcement of the Merger, stockholder plaintiffs filed putative class actions challenging its terms. Once the Merger had closed, the stockholders consolidated their claims in a single putative class action (the "Plenary Action"). In the Plenary Action, the stockholder plaintiffs asserted that Lampert, his affiliates, and certain Company directors breached their fiduciary duties by engaging in a squeeze-out transaction at an unfair price.

Meanwhile, Cannon Square, LLC (the "Fund") acquired a position in the Company's shares. The Fund demanded appraisal and initiated an appraisal proceeding (the "Appraisal Proceeding"). Through his entities, Lampert benefitted from the Fund's decision, because Lampert could retain and use the Merger Consideration that otherwise would have gone to the Fund. As long as Lampert's cost of capital exceeded the statutorily specified interest rate in an appraisal proceeding, Lampert would come out ahead, even if he eventually had to pay out the Merger Consideration at the end of the Appraisal Proceeding. And if Lampert could prove in the Appraisal Proceeding that the Merger Consideration exceeded the fair value of

---

[8] *Id.* § 2.04.

the Company's shares, then he could come out even further ahead. The opposite could also be true.

In 2020, the court entered an order coordinating the Plenary Action and the Appraisal Proceeding for purposes of discovery and trial. In 2021, the court entered an order certifying a class in the Plenary Action. The class definition arguably included the appraisal claimants, but did not address them explicitly.

In 2022, the Company and Parent filed voluntary petitions for bankruptcy. By seeking appraisal, the Fund became an unsecured general creditor of the Company holding an unliquidated claim for the fair value of its dissenting shares. As an unsecured general creditor, the Fund had no prospect of recovering anything from the Company. And because Parent was in the same boat, any effort by the Fund to withdraw its demand for appraisal and receive the Merger Consideration became equally valueless.

The Fund therefore opted to join the class in the Plenary Action. In 2023, the court approved a stipulated modification to the class certification order that explicitly include stockholders who had exercised their appraisal rights. The expanded class consisted of 10,579,356 shares: the original 10,321,048 non-dissenting shares plus another 258,308 dissenting shares held by the Fund.

In 2024, the court issued a post-trial decision finding that the Merger was not entirely fair.[9] By this point, Lampert was the only remaining defendant. The court

---

[9] *Post-Trial Op.*, 309 A.3d at 504.

held that the Company's stockholders were entitled to $4.99 per share. Operating on the assumption that the members of the class received the Merger Consideration, the court awarded compensatory damages "equal to the difference between what the minority stockholders received and the fair value of the company."[10] That figure amounted to $1.78 per share. Assuming 10,579,356 shares in the class, Lampert would be liable for damages of $18,831,253.68, plus interest. The court did not focus on the Fund's recovery.

Lampert moved for reargument. The court agreed in part and reduced the fair price determination to $4.06 per share. Still operating on the assumption that the class members had received the Merger Consideration, the court reduced the compensatory damages award to $0.85 per share. Assuming 10,579,356 shares in the class, Lampert would be liable for damages of $8,992,452.60, plus interest. Again, the court did not focus on the Fund's recovery.

Because the Fund sought appraisal, the Fund had not received the Merger Consideration. If the Fund received the same $0.85 per share that other members of the class received, then the Fund would not be made whole. Far from it, the Fund would end up with approximately one-third of the original Merger Consideration. But

---

[10] *Id.* at 485.

if Lampert had to make the Fund whole, then his liability for damages would increase by an additional $829,168.68.[11] His total liability would amount to $9,821,621.28.[12]

When the Fund sought to assert its entitlement to the fair price damages award without any offset, class counsel in the Plenary Action declined to make the argument. The Fund hired new counsel and moved to intervene. The court granted intervention.

After the Fund intervened, the plaintiffs in the Plenary Action settled with Lampert for total proceeds of $10 million. The Fund is part of the class, and the settlement heightened the significance of the dispute over the Fund's entitlement. Assuming a pro rata distribution across 10,579,356 shares in the class, each share would receive $0.95. But a pro rata distribution would not address the Fund's loss of the Merger Consideration. If the Fund could recover the Merger Consideration of $3.21 per share off the top, then the Fund would receive a unique payment of $829,168.68. That would leave $9,170,831.32 to spread across the class. Each share in the class then would receive $0.87 per share. Every stockholder, including the Fund, would receive total consideration of $4.08 per share ($3.21 + $0.87).

## II. LEGAL ANALYSIS

Through its motion, the Fund seeks fair price damages of $4.06 per share. The Fund argues that every class member was entitled to the same fair price damages

---

[11] ($4.06 − $0.85) × 258,308 = 829,168.68

[12] $8,992,452.60 + $829,168.68 = $9,821,621.28

award, including those class members who had already received the Merger Consideration. The Post-Trial Decision awarded those other class members incremental damages not because that was all they were entitled to get, but rather because their damages were offset by the Merger Consideration to avoid a double recovery. The Fund did not previously receive the Merger Consideration, so it can recover the full fair price damages award without any offset.

Under *Technicolor*, the Fund is correct. Once the Fund opted to join the Plenary Action, the Appraisal Proceeding became irrelevant. Based on the court's ruling in the Post-Trial Opinion, the Fund and every other class member became entitled to the judicially determined fair price of $4.06 per share. Any member of the class who had previously received amounts that could result in a double recovery had to offset those amounts against the damages entitlement. For the members of the class who received the Merger Consideration, that offset reduced their recovery to $0.85 per share. The Fund did not receive the Merger Consideration or any other amounts that could be offset against its damages entitlement. The Fund is therefore entitled to $4.06 per share.

## A.    *Technicolor*'s Lessons

In 1988, the *Technicolor* decision authorized stockholders who sought appraisal to pursue plenary claims simultaneously, whether in their own right or as class members. The Delaware Supreme Court held that a former stockholder could pursue both actions to judgment before electing a remedy. The only limitation is that a former stockholder cannot obtain a double recovery.

10

The *Technicolor* litigation began when Cinerama, Inc. sought appraisal of its shares in Technicolor Inc. after a second-step merger that converted each Technicolor share into the right to receive $21.00. During discovery in the appraisal proceeding, a former Technicolor director testified that had not voted with the other directors to waive a supermajority approval requirement and had voted against the merger. Cinerama also uncovered evidence of an undisclosed side payment to a director. Armed with that information, Cinerama filed a separate plenary action asserting "multiple acts of wrongdoing and breaches of fiduciary duty in the merger, including: waste of assets, self-dealing, intentional and negligent misrepresentation, unfair dealing, accepting a grossly unfair price for Technicolor stock, and carrying out an unlawful merger in violation of Technicolor's certificate of incorporation."[13] Cinerama sought either (i) rescission of the merger or (ii) an award of rescissory damages, plus compensatory damages "for all losses resulting from defendants' wrongdoing."[14]

The *Technicolor* defendants argued that by opting for appraisal, Cinerama could no longer pursue plenary claims. Chancellor Allen rejected that argument, holding that a stockholder who opted to pursue appraisal was not foreclosed from

_____

[13] 542 A.2d at 1186. Cinerama also sought to amend its appraisal petition to include these additional claims. The Delaware Supreme Court held that an appraisal proceeding could not be expanded to include plenary claims. The Delaware Supreme Court nevertheless authorized the two actions to be consolidated into one proceeding for discovery and trial. *Id.* at 1190 ("Cinerama's motion to consolidate, for purposes of trial as well as discovery, its fraud and appraisal actions should have been granted."). The outcome is the same: a single case addressing both the appraisal and plenary claims.

[14] *Id.*

11

bringing a plenary action seeking rescission, rescissory damages, or other equitable relief if "at the time of making [the appraisal] election, [the stockholder] did not know and had no reason to know the facts upon which the right to rescission allegedly rests."[15] Chancellor Allen also held that a stockholder could not simultaneously litigate a plenary action and an appraisal proceeding to judgment. His opinion stated that a stockholder must choose between the remedies "no later than the time plaintiff announces himself as ready for trial."[16]

The Delaware Supreme Court accepted an interlocutory appeal.[17] Cinerama argued on appeal that it could litigate both actions through judgment, as long as it did not obtain a double recovery. The defendants cross-appealed and renewed their argument that by opting for appraisal, Cinerama was no longer a stockholder and could not assert stockholder rights, including the right to sue for breach of fiduciary duty.

The Delaware Supreme Court ruled for Cinerama on both points. The justices held that Cinerama had the right to challenge the merger because Cinerama had not

---

[15] *Cede & Co. v. Technicolor, Inc.*, 1987 WL 4768, at \*8 (Del. Ch. Jan. 13, 1987), *aff'd in part, rev'd in part sub nom. Technicolor*, 542 A.2d 1182. Then-federal district court judge Walter K. Stapleton had predicted that a Delaware court would reach that conclusion. *See Dofflemyer v. W.F. Hall Printing Co.*, 558 F. Supp. 372, 381 (D. Del. 1983) ("While no Delaware case has so held, I predict that the Supreme Court of Delaware would hold that a stockholder who elects appraisal in ignorance of fraud in the merger will be entitled to rescind that election upon discovery of the fraud even though his election would otherwise be irrevocable under the appraisal statute.").

[16] *Cede & Co. v. Technicolor, Inc.,* 1987 WL 4768, at \*8.

[17] *Cinerama, Inc. v. Technicolor, Inc.*, 523 A.2d 981 (Del. 1987) (ORDER).

12

known about the facts supporting its plenary claim when electing appraisal. The court reasoned that "[n]o one would assert that a former owner suing for loss of property through deception or fraud has lost standing to right the wrong that arguably caused the owner to relinquish ownership or possession of the property."[18]

The justices also rejected the argument that opting for appraisal resulted in Cinerama taking on some special non-stockholder status that obviated its ability to assert plenary claims. The Delaware Supreme Court observed that a stockholder who accepted the merger consideration had its shares converted into cash, yet no one regarded that stockholder as having lost its ability to challenge the merger. The same logic applied to a stockholder who sought appraisal. The Delaware Supreme Court concluded that the law should provide "equal recourse for a former shareholder who accepts a cash-out offer in ignorance of a later-discovered claim against management for breach of fiduciary duty and a shareholder who discovers such a claim after electing appraisal rights."[19]

The Delaware Supreme Court also cited policy reasons for that outcome:

Experience has shown that the great majority of minority shareholders in a freeze-out merger accept the cash-out consideration, notwithstanding the possible existence of a claim of unfair dealing, due to the risks of litigation. With the majority of the minority shareholders tendering their shares, only shareholders pursuing discovery during an appraisal proceeding are likely to acquire the relevant information needed to pursue a fraud action if such information exists. Such shareholders, however, would not have any financial incentive to communicate their discovered claim of wrongdoing in the merger to the

---

[18] *Technicolor*, 542 A.2d at 1188.

[19] *Id.*

13

shareholders who tendered their shares for the consideration offered by the majority and, by tendering, have standing to file suit. Thus, to bar those seeking appraisal from asserting a later-discovered fraud claim may effectively immunize a controlling shareholder from answering to a fraud claim.[20]

In other words, permitting an appraisal claimant to bring a fiduciary duty claim would help maintain Delaware's privatized system of fiduciary accountability, which relies on private plaintiffs to investigate and assert claims.

Finally, the justices ruled in Cinerama's favor on the election-of-remedies issue. Chancellor Allen had held an appraisal petitioner must elect which relief to pursue when ready for trial, thereby ensuring that only one of the two cases would be tried. The Delaware Supreme Court disagreed, holding that Cinerama could pursue both cases to judgment, subject to the limitation that a stockholder only could receive a single recovery.[21]

In reaching this conclusion, the Delaware Supreme Court stressed that "[a]n appraisal proceeding and an equitable action for rescissory damages (for illegality or other wrongdoing in extinguishing minority shareholder interests) do not involve the assertion of inconsistent rights."[22]

- An appraisal proceeding seeks to enforce a statutory right; a plenary action seeks to remedy a fiduciary wrong.

---

[20] *Id.* at 1188–89 (citation omitted).

[21] *Id.* at 1190.

[22] *Id.*

14

- The respondent in an appraisal proceeding is the surviving corporation; the defendants in a plenary action are the fiduciary defendants and other alleged wrongdoers.

- An appraisal proceeding resulting in an award of fair value, while an entire fairness action "affords an expansive remedy" that can include "any damages sustained by the shareholders."[23] That award may include compensatory damages comparable to a fair value award, but it could also include rescissory damages or other forms of relief.

The justices concluded that "Cinerama should not have been barred from proceeding to trial on its alternate claims for relief."[24] In short, the doctrine of election of remedies had "no application to this case."[25]

Under *Technicolor*, a stockholder who sought appraisal can opt for a plenary remedy. Although *Technicolor* does not say so expressly, its reasoning implies that a stockholder who sought appraisal can recover *both* the incremental damages above the merger consideration *and* the merger consideration itself. Otherwise, a stockholder who sought appraisal and therefore did not receive the merger consideration would only recover incremental damages. Meanwhile, a stockholder who had not sought appraisal would have already received the merger consideration and would also recover incremental damages. In that world, Delaware law would not be providing "equal recourse for a former shareholder who accepts a cash-out offer in ignorance of a later-discovered claim against management for breach of fiduciary

---

[23] *Id.* at 1187.

[24] *Id.* at 1191.

[25] *Id.*

15

duty and a shareholder who discovers such a claim after electing appraisal rights."[26]

The plenary action also would not potentially render the appraisal proceeding "moot,"[27] because the appraisal claimant would have to look elsewhere for the merger consideration.

## B. Applying *Technicolor*'s Lessons

Since *Technicolor*, Delaware decisions have treated appraisal proceedings and plenary actions as distinct claims that a squeezed-out stockholder can pursue simultaneously. Following the Delaware Supreme Court's implicit suggestion, the Court of Chancery has attempted to rule on the plenary claims first, because a finding of liability and the resultant remedy could moot the appraisal proceeding.[28] To that

[26] *Id.* at 1188.

[27] *Id.* at 1189, 1191.

[28] *Id.* at 1189 ("If the merger was not lawfully effected, Cinerama should be entitled to recover rescissory damages, rendering the appraisal action moot."); *id.* at 1191 ("During the consolidated proceeding, if it is determined that the merger should not have occurred due to fraud, breach of fiduciary duty, or other wrongdoing on the part of the defendants, then Cinerama's appraisal action will be rendered moot and Cinerama will be entitled to receive rescissory damages. If such wrongdoing on the part of the defendants is not found, and the merger was properly authorized, then Cinerama will be entitled to collect the fair value of its Technicolor shares pursuant to statutory appraisal and its fraud action will be dismissed. Under either scenario, Cinerama will be limited to a single recovery judgment."); *In re Dole Food Co., Inc. S'holder Litig.*, 2015 WL 5052214, at *25 (Del. Ch. Aug. 27, 2015) ("The Delaware Supreme Court has instructed that . . . the court should rule on the plenary claims first, because a finding of liability and the resultant remedy could moot the appraisal proceeding."); *Bomarko, Inc. v. Int'l Telecharge, Inc.* (*Bomarko I*), 794 A.2d 1161, 1177 (Del. Ch. 1999) ("The Supreme Court made clear in *Cede & Co. v. Technicolor, Inc.* that, in trying this consolidated fraud and appraisal action, the Chancery Court should first evaluate the fraud claims."), *aff'd sub nom. Int'l Telecharge, Inc. v. Bomarko, Inc.* (*Bomarko II*) 766 A.2d 437 (Del. 2000).

16

end, this court has allowed stockholders who sought appraisal to participate in class-wide recoveries in plenary actions.[29]

In *Mindbody*, this court addressed the same argument that Lampert advances in this case. The *Mindbody* defendants maintained that appraisal claimants who opted for a plenary recovery could only receive the $1 in incremental damages that the court awarded to the plenary class members who had already received the merger consideration. According to the defendants, the appraisal claimants could not receive the underlying merger consideration. Chancellor McCormick rejected that argument and held that the appraisal claimants could receive both $1 in damages and the merger consideration, putting them on par with the class.[30] Relying on *Technicolor*, she reasoned that

> if the Appraisal Petitioners elect the Class remedy, then they must be treated as members of the Class. The members of the Class received $36.50 per share from Mindbody in the Merger and then received an additional $1 per share from the Non-Settling Defendants through the Post-Trial Opinion. If, however, the Appraisal Petitioners elect to pursue their appraisal claims, then they may not receive the Class remedy and the court will determine the fair value of the Appraisal Petitioners' shares.[31]

---

[29] *E.g.*, *In re Mindbody, Inc., S'holder Litig.*, 2023 WL 7704774, at *6–7 (Del. Ch. Nov. 15, 2023), *aff'd in pertinent part sub nom. In re Mindbody, Inc.* (*Mindbody Appeal*), 2024 WL 4926910 (Del. Dec. 2, 2024); *Dole Food*, 2015 WL 5052214, at *47; *In re Emerging Commc'ns, Inc. S'holders Litig.*, 2004 WL 1305745 (Del. Ch. May 3, 2004).

[30] *Mindbody*, 2023 WL 7704774, at *7.

[31] *Id.* at *8.

17

In other words, the appraisal claimants could only receive a single recovery, but they were entitled to the full damages award in the plenary action without any offset for merger consideration they did not receive.[32]

In reaching this conclusion, Chancellor McCormick did not break new ground. While serving by special designation as a Vice Chancellor after his elevation to the Delaware Supreme Court, Justice Jacobs applied the same principles in the *Emerging Communications* litigation. There, a controlling stockholder eliminated the minority for $10.25 per share. Stockholders asserted plenary claims and pursued their appraisal rights. Justice Jacobs tried the two cases together and addressed them in the same opinion. He awarded the plenary class members $27.80 per share, reflecting fair-price damages of $38.05 per share offset by the merger consideration of $10.25 per share. He awarded the appraisal claimants the full $38.05 per share, because they had not received the merger consideration and had no other offsetable amounts. All stockholders thus received the same damages remedy. Their individual recoveries differed not because of different damages entitlements, but because of different offsets. Only the stockholders who received the merger consideration had received an amount that needed to be offset to avoid a double recovery.[33]

---

[32] Conversely, if the appraisal petitioners opted to litigate their appraisal claim to judgment and obtained a higher amount, then they would receive that amount minus an offset for the damages recovery in the plenary action.

[33] *Emerging Commc'ns*, 2004 WL 1305745, at *43, *43 n.193.

The court took a similar approach in *Dole Food*. After a squeeze-out merger that eliminated the minority for $13.50 per share, some stockholders pursued a plenary action alleging breaches of fiduciary duty, while other stockholders pursued a statutory appraisal proceeding. The court resolved the plenary action first and awarded incremental damages of $2.74 per share.[34] The court did not resolve the appraisal proceeding but noted that the plenary decision "likely renders the appraisal proceeding moot."[35] That conclusion only makes sense if the appraisal claimants could recover $16.33 per share, reflecting both the merger consideration and the incremental damages award. The court did not have to explore the issue further because the parties settled both the plenary action and the appraisal proceeding for the amount the court awarded. The appraisal claimants received both the merger consideration and the incremental damages.

C.    **Application To This Case**

Under these precedents, the Fund can opt for the plenary recovery and receive both the merger consideration and the incremental damages award. Because the Fund has not received any amounts previously, there is no offset. The Fund can recover $4.06 per share. Lampert advanced six arguments to the contrary, but his arguments are not convincing.

---

[34] *Dole Food*, 2015 WL 5052214, at *2.

[35] *Id.* at *3; *accord id.* at *47.

19

### 1. The Something-Extra Argument

In opposing the Fund's motion, Lampert strives to portray the Fund as seeking something extra. He claims the Fund wants *more* than what the plenary class of stockholders can receive, then comes up with reasons why the Fund can't seek more. In truth, the Fund is not seeking more than the standard compensatory fair price damages award. The only difference between the Fund and the plenary class is that the Fund did not receive the Merger Consideration or other amounts that could offset that recovery.

The Fund correctly describes the nature of a damages award in a plenary action. Dating back to *Weinberger*, the standard (but not exclusive) measure of damages in a challenge to a squeeze-out transaction is an award of quasi-appraisal damages equal to a fair price for the plaintiff's shares.[36] Delaware decisions routinely deduct the merger consideration from that damages measure and award incremental damages. That step does not change the damages measure; it takes into account the

---

[36] *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983); *see In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 40 (Del. Ch. 2014) ("[T]he *Weinberger* court held that when a merger has been successfully challenged, the possible forms of monetary relief include an out-of-pocket measure of damages equal to what a stockholder would have received in an appraisal, viz., the fair value of the stockholder's shares."); *Steiner v. Sizzler Rests. Int'l, Inc.*, 1991 WL 40872, at *2 (Del. Ch. Mar. 19, 1991) (Allen, C.) ("[The] court, upon proof of that fact, is empowered to afford a remedy that would be fully sufficient. That is, the court may establish a 'quasi-appraisal' remedy designed to give to each tendering shareholder the equivalent of the appraisal remedy.").

amounts stockholders have already received.[37] For that reason, Court of Chancery decisions addressing consolidated appraisal and entire fairness proceedings have regularly awarded the same damages measure across the board, while accounting for amounts some of the stockholders previously received.[38] The merger consideration represents the standard offset, but appraisal claimants could have a similar offset if the corporation pre-paid part of the eventual fair value award.[39] And a similar offset

---

[37] *See Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000) ("The traditional measure of damages is that which is utilized in connection with an award of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by the defendant's wrongful conduct. To achieve that purpose, compensatory damages are measured by the plaintiff's 'out-of-pocket' actual loss. Thus, where a merger is found to have been effected at an unfairly low price, the shareholders are normally entitled to out-of-pocket (i.e., compensatory) money damages equal to the 'fair' or 'intrinsic' value of their stock at the time of the merger, less the price per share that they actually received.").

[38] *See, e.g.*, *In re PNB Hldg. S'holders Litig.*, 2006 WL 2403999, at *1 (Del. Ch. Aug. 18, 2006) ("I conclude that the fair value of a share of PNB on the date of the merger was $52.34, which is $11.34 per share higher than the consideration offered in the merger. Therefore, . . . the [plaintiffs who brought entire fairness claims] will receive $11.34—the damages resulting from the unfair merger."); *Del. Open MRI Radiology Assocs., P.A. v. Kessler*, 898 A.2d 290, 342–44 (Del. Ch. Apr. 26, 2006) (finding company's per-share value, then using that "as the basis for a conclusion that the merger was not financially fair to the squeezed-out minority . . . as a matter of equity," and granting the same amount as damages); *Emerging Commc'ns,* 2004 WL 1305745, at *24, *43 (finding that "fair value" was $38.05, stating that "[f]rom that fair value finding it further follows that the $10.25 per share merger price was not a 'fair price' within the meaning of the Delaware fiduciary duty case law beginning with *Weinberger,*" and granting the difference as damages).

[39] *See* 8 *Del. C.* § 262(h) ("At any time before the entry of judgment in the proceedings, the surviving, resulting or converted entity may pay to each person entitled to appraisal an amount in cash, in which case interest shall accrue thereafter as provided herein only upon the sum of (1) the difference, if any, between the amount so paid and the fair value of the shares as determined by the Court, and (2) interest theretofore accrued, unless paid at that time.").

would apply if the appraisal claimants litigated their case to judgment first. If the plenary class action subsequently generated a recovery higher than the adjudicated fair value determination, the appraisal claimants could opt to participate in the class recovery, but the amount of the appraisal claimants' recovery would be offset by amounts recovered in the appraisal proceeding.[40] Across all shares in the class, the damages entitlement remains the same. The variant is the offset, not the damages.

Lampert misconstrues how the out-of-pocket measure operates by maintaining that a court always treats the merger consideration as a deduction. In making this argument, Lampert confuses the damages award with the net recovery. The compensatory damages measure contemplates that when a controlling stockholder squeezes out the minority, those stockholders are entitled to a fair price for their shares. That is the damages entitlement. Then, to avoid a double recovery, the court offsets amounts that the class members already received. The same is true for other

---

[40] In the *Columbia Pipeline* litigation, for example, the court tried the appraisal proceeding first at the surviving corporation's request. The court found "that the fair value of Columbia's common stock on the effective date was $25.50 per share," the same as the transaction price. *In re Appraisal of Columbia Pipeline Gp., Inc.*, 2019 WL 3778370, at *1 (Del. Ch. Aug. 12, 2019). In the subsequently litigated plenary action, the court held that the class could recover $1 more than the merger consideration, or $26.50 per share. *See In re Columbia Pipeline Gp., Inc. Merger Litig.*, 299 A.3d 393, 500 (Del. Ch. 2023). The appraisal petitioners who opted into the plenary class had already received $25.50 per share in the appraisal, so they too were only entitled to the $1 per share in damages. But if the court had appraised the shares at a lower amount, the offset still would have applied. If, for example, the court had appraised the fair value of the shares at $21.50, then the appraisal petitioners who opted into the plenary class would have already received that amount through the appraisal proceeding. If they opted into the plenary recovery, they would have been entitled to $5 per share.

22

damages measures. Whatever the damages metric might be—fair value, fair price, a fairer price, or rescissory damages—the court deducts what the class members already received to avoid a double recovery.

Without this approach to damages, the Delaware courts' consistent statements about the plenary action potentially rendering the appraisal proceeding moot would not make sense. If an appraisal petitioner who opted to participate in the plenary recovery could only receive the incremental damages award, then the appraisal proceeding could not be rendered moot.[41] The appraisal claimant would have to continue litigating the appraisal proceeding to recover at least the merger consideration and be made whole.

Awarding the full damages measure also comports with the principles of Delaware law that apply where a fiduciary has breached its duty of loyalty. "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly. . . . The strict imposition of penalties under Delaware law are designed to discourage disloyalty."[42] Once a breach of duty has been established, this court's "powers are complete to fashion any form of equitable and monetary relief as may be appropriate."[43] "In determining damages, the powers of the Court of Chancery

---

[41] *See, e.g., Technicolor*, 542 A.2d at 1191 (noting that plenary action could render appraisal proceeding moot); *In re Columbia Pipeline Gp., Inc. Merger Litig.*, 316 A.2d 359, 403–04 (Del. Ch. 2024) (same); *Dole Food*, 2015 WL 5052214, at *2–3, 25, 47; *Bomarko I,* 794 A.2d at 1164, 1177.

[42] *Thorpe v. CERBCO, Inc.* (*Thorpe II*), 676 A.2d 436, 445 (Del.1996).

[43] *Weinberger*, 457 A.2d at 714.

are very broad in fashioning equitable and monetary relief under the entire fairness standard as may be appropriate, including rescissory damages."[44] The award can also include "elements of rescissory damages," so long as the court "considers them susceptible of proof and a remedy appropriate to all the issues of fairness" presented by the case.[45]

In a plenary breach of fiduciary duty action, "the court can, and has in the past, awarded damages designed to eliminate the possibility of profit flowing to defendants from the breach of the fiduciary relationship."[46] "Once disloyalty has been established," the court should ensure "that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct."[47]

> The rule, inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation.[48]

---

[44] *Bomarko II*, 766 A.2d at 440.

[45] *Weinberger*, 457 A.2d at 714.

[46] *Gesoff v. IIC Indus., Inc.*, 902 A.2d 1130, 1154 (Del. Ch. 2006).

[47] *Thorpe II*, 676 A.2d at 445 (first citing *Oberly v. Kirby*, 592 A.2d 445, 463 (Del. 1991); and then citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 334 (Del. 1993)).

[48] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

Disgorgement of profits is an available remedy, even in a situation where the corporation was not harmed by the disloyal act.[49]

Under these precedents, the Fund is entitled to a damages award equal to the judicially determined fair price. Here, that means $4.06 per share. Because the Fund did not receive the Merger Consideration, the Fund remains entitled to $4.06 per share. Conceptually, that is the only remedial outcome that could render the appraisal proceeding moot. It also ensures that Lampert is not unjustly enriched by keeping the Merger Consideration that the Fund otherwise would have received. The Fund is not getting something extra. The Fund is simply receiving its damages entitlement.

### 2. The Purported Conflict With The Appraisal Statute

Lampert also seeks to block the Fund from obtaining its full damages entitlement by arguing that the appraisal statute prevents the Fund from opting to participate in the plenary remedy. In taking this position, Lampert repeats the arguments that the Delaware Supreme Court rejected in *Technicolor*.

As Lampert correctly points out, the appraisal statute states that "no person who has demanded appraisal rights with respect to some or all of such person's shares . . . shall be entitled to vote such shares for any purpose or to receive payment of dividends or other distributions on such shares (except dividends or other distributions payable to stockholders of record at a date which is prior to the effective

---

[49] *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 840 (Del. 2011).

date of the merger."[50] The appraisal statute also addresses how a stockholder who perfected the right to an appraisal can withdraw from that process. During the first sixty days after the effective time of the merger, an appraisal claimant can withdraw a demand unilaterally.[51] After that, withdrawal requires the consent of the corporation.[52]

Lampert asserts that under these provisions, the Fund "has forfeited any distributions—including the merger consideration—attributable to its stock ownership" and the Fund's "sole remedy is for receipt of 'fair value'" in the appraisal action against the Company.[53] For support, Lampert relies on one of a handful of decisions which state that by seeking appraisal, a stockholder gave up its rights as a stockholder and became a quasi-creditor of the surviving corporation.[54] Lampert

---

[50] 8 *Del. C.* § 262(k).

[51] *Id.*

[52] *Id.*

[53] Opp. at 6. Citations in the form "Opp. at __" refer to Defendants' Answering Brief in Opposition to Intervenor-Plaintiff Cannon Square, LLC's Motion Requesting Further Relief.

[54] *See id.* (citing *Dofflemyer v. W. F. Hall Printing Co.*, 432 A.2d 1198, 1201 (Del. 1981)). The leading decision for that proposition is *Southern Production Company v. Sabath*, 87 A.2d 128, 133–34 (Del. 1952) (stating that by seeking appraisal, a stockholder "elect[s] to withdraw from the corporate enterprise and take the value of his stock" and gives up the "three principal rights belonging to the stock, viz., the right to vote, the right to dividends, and the right to any other distribution upon it"). Interestingly, those decisions did not reference the right to sue. Today, a stockholder's right to sue is regarded as one of the three fundamental rights associated with share ownership. *See Strougo v. Hollander*, 111 A.3d 590, 595 n.21 (Del. Ch. 2015) (Bouchard, C.) (citing Leo E. Strine, Jr., *Can We Do Better by Ordinary*

26

maintains that "[n]othing in the [appraisal] statute entitles Petitioner to seek alternative payors for the merger consideration now."[55]

For starters, the Fund is not trying to find an alternative payor for the Merger Consideration. The Fund wants its damages entitlement: a fair price for the harm the Fund suffered from the loss of its shares. The fact that the Fund did not receive the Merger Consideration means that, unlike other class members, that amount is not available as an offset. What the Fund seeks in the Plenary Action is damages, not the Merger Consideration.

More broadly, by relying on the appraisal statute to limit the Fund's ability to opt into the Plenary Action, Lampert seeks to overturn *Technicolor*. As discussed previously, the defendants in *Technicolor* argued that Cinerama had opted for appraisal, was bound by that election, and could no longer assert a plenary claim. The *Technicolor* decision rejected those arguments.[56]

Most recently, in *Mindbody*, the defendants similarly argued that because the sixty-day period for a unilateral withdrawal of an appraisal demand had passed, the appraisal petitioners could not opt to receive the merger consideration. Chancellor McCormick rejected that interpretation as contrary to *Technicolor*. She explained that the *Technicolor* framework "contemplate[s] that, upon court approval, an

---

*Investors? A Pragmatic Reaction to the Dueling Ideological Mythologists of Corporate Law*, 114 Colum. L. Rev. 449, 453–54 (2014)).

[55] Opp. at 7.

[56] *See Technicolor*, 542 A.2d at 1188–89.

appraisal claimant can elect to receive the merger consideration and Class damages over the respondent's objection, and this decision follows that precedent."[57] The appraisal statute did not pose any problem for the appraisal claimants opting into the class wide remedy.

### 3. The Purported Fraud Requirement

In his third argument, Lampert maintains that an appraisal claimant can only withdraw from an appraisal proceeding and opt into a plenary action if "any of the Defendants misled the Petitioner or otherwise committed some actionable wrong that precluded Petitioner from accepting the merger consideration."[58] He then asserts that the Fund failed to point to an actionable wrong that meets this test.

That argument at least finds some footing in the language of the *Technicolor* opinion. Lampert correctly points out that the *Technicolor* decision referred to Cinerama's plenary claim in short hand as the "fraud claim," and that nomenclature seems to support Lampert's position. But Cinerama's claim was not limited to fraud. Cinerama also asserted claims for breach of fiduciary duty, waste of assets, self-dealing, unfair dealing, accepting a grossly unfair price, and carrying out an unlawful merger.[59] When the justices commended Chancellor Allen for rejecting the defendants' argument, they did not limit themselves to a fraud claim. They stated:

---

[57] *Mindbody*, 2023 WL 7704774, at *8.

[58] Opp. at 4.

[59] *Technicolor*, 542 A.2d at 1184, 1186.

28

> The Chancellor correctly equated the right of a shareholder who loses share membership through misrepresentation, conspiracy, fraud, or breach of fiduciary duty to seek redress with the right of a shareholder who dissents from a merger and seeks appraisal of his shares to seek redress after discovery of allegedly wrongful conduct. Fairness and consistency require equal recourse for a former shareholder who accepts a cash-out offer in ignorance of a later-discovered claim against management for breach of fiduciary duty and a shareholder who discovers such a claim after electing appraisal rights.[60]

The analysis was not limited to situations involving fraud or misrepresentation. The justices' reasoning encompassed unknown claims for breach of fiduciary duty. And that makes sense. By definition, stockholders do not know that a court will determine that their fiduciaries breached their duties when opting whether to exercise appraisal rights. Along similar lines, the Delaware Supreme Court has acknowledged that "generally when a plaintiff proves a paradigmatic *Revlon* claim, a defendant will not be able to show that the stockholder vote was fully informed, precisely because the Board did not know about and could not disclose the information about the officer's machinations."[61] The court's adjudication renders the stockholder vote uninformed. Similarly here, the court's determination represents information that the stockholders did not have when deciding whether to seek appraisal.

### 4. The Purported Rescission Requirement

Lampert next argues that when the *Technicolor* decision referred to a breach of fiduciary duty action mooting an appraisal action, the justices only envisioned the

---

[60] *Id.* at 1188.

[61] *Mindbody Appeal*, 2024 WL 4926910, at *27 (cleaned up).

possibility that a plenary action could result in recission. Lampert correctly observes that an award of rescission would unwind the merger, restore everyone to their positions *ex ante*, and render the appraisal claim moot. But Lampert errs by contending that *Technicolor* only envisioned rescission as having mooting effect.

When Cinerama asserted its plenary claims, it asked not only for rescission but also for rescissory damages and compensatory damages in the form of "damages for all losses resulting from defendants' wrongdoing."[62] When discussing the possibility of the plenary action mooting the appraisal claim, the Delaware Supreme Court focused on the possibility of rescissory damages, not true rescission. The justices explained that "[i]f the merger was not lawfully effected, Cinerama should be entitled to recover rescissory damages, rendering the appraisal action moot."[63] The

---

[62] *Technicolor*, 542 A.2d at 1186.

[63] *Id.* at 1189; *see id.* at 1183 ("We accepted this interlocutory appeal from the Court of Chancery to address . . . the standing and right of a minority shareholder who has dissented from a cash-out merger and commenced an appraisal proceeding under 8 *Del. C.* § 262 to assert and pursue a later-discovered individual claim of fraud in the merger through an action for rescissory damages . . . ."); *id.* at 1184 ("Cinerama appeals . . . the Court's ruling requiring Cinerama to make a binding election before trial between its appraisal remedy and its rescissory claim for damages . . . ."); *id.* at 1186 ("Through its fraud action, Cinerama seeks a judgment rescinding the merger or, alternatively, an award of rescissory damages and damages for all losses resulting from defendants' wrongdoing."); *id.* ("For the first time, this Court addresses the standing and right of a shareholder dissenting from a cash-out merger to pursue under Delaware law both an appraisal remedy under 8 *Del. C.* § 262 and a subsequent individual action for rescissory damages . . . ."); *id.* at 1190 ("An appraisal proceeding and an equitable action for rescissory damages (for illegality or other wrongdoing in extinguishing minority shareholder interests) do not involve the assertion of inconsistent rights."); *id.* at 1191 ("During the consolidated proceeding, if it is determined that the merger should not have occurred due to fraud, breach of fiduciary

30

justices also did not regard rescission as a likely remedy; they observed that "[a]t this late date, there is a strong reluctance to 'unwind' a merger."[64]

The Delaware Supreme Court plainly understood that the likely remedy in *Technicolor* involved a damages award, not true rescission, yet the justices still viewed the plenary action as potentially mooting the appraisal claim. That concept only makes sense if appraisal claimants can recover full damages without an offset, regardless of whether the court awards rescissory or compensatory damages. The Delaware Supreme Court thus necessarily contemplated that an appraisal petitioner could receive full damages in the plenary action, including any amount for the eschewed merger consideration. A contrary rule that only awarded incremental damages in the plenary action would make it impossible for that recovery to moot the appraisal action. That outcome would conflict with *Technicolor*.

Lampert is therefore wrong to contend that a plenary action can only moot an appraisal proceeding if the plaintiff obtains rescission. The *Technicolor* decision contemplated that a damages award could have that same effect. There is no conflict between the appraisal statute and the Fund's ability to recover full damages equal to a fair price for its shares.

---

duty, or other wrongdoing on the part of the defendants, then Cinerama's appraisal action will be rendered moot and Cinerama will be entitled to receive rescissory damages."); *id.* at 1192 ("Thus, we hold that Cinerama should be permitted to exercise its appraisal rights while seeking rescissory damages in a consolidated action, subject to the limitation of a single recovery judgment.").

[64] *Id.* at 1191 n.13.

31

### 5. The Waiver Argument

Moving from substance to procedure, Lampert argues that the Fund failed to adequately raise its fair price damages claim and waived its ability to seek the Merger Consideration as part of its damages. That contention has both a short answer and a longer answer.

The short answer is that the Fund has not sought additional damages, so there was nothing to waive. The Fund seeks the same fair price damages award as everyone else. The difference between the Fund and the other class members is not the damages entitlement, but the offset necessary to avoid a double recovery. For the other members of the class, the offset is $3.21 per share. For the Fund, the offset is $0. The Fund receives more damages per share because it lacks any offset, not because it seeks a special or unique damages calculation.

The longer answer is that the Fund adequately preserved its damages claim. In the recent *Holifield* decision, the Delaware Supreme Court held that a plaintiff had not waived its ability to seek damages, despite not presenting any evidence on damages at trial, because (i) the plaintiff included a request for damages in its complaint, (ii) the plaintiff briefly referenced the issue in post-trial briefing and argument, and (iii) the parties stipulated to preserve the damages issue pending the outcome of any appeal in the proposed partial order and judgment.[65]

---

[65] *See Holifield v. XRI Inv. Hldgs. LLC*, 304 A.3d 896, 936–37 (Del. 2023).

In this case, the plaintiffs preserved their damages claim under the *Holifield* standard:

- The plaintiffs identified the calculation of damages as an issue in two places in the pre-trial stipulation.[66]

- The plaintiffs addressed damages extensively in their pre-trial brief,[67] and they made clear that they were seeking damages equal to a fair price for their shares.[68]

- During trial, the plaintiffs' expert testified that because some dissenting stockholders that were members of the class sought appraisal and did not receive the Merger Consideration, their damages should not be offset by the $3.21 per share that other stockholders had received.[69]

- In their post-trial opening/answering brief, the plaintiffs continued to seek damages equal to a fair price for their shares,[70] and they noted that the damages award for stockholders who had dissented would not be subject to an offset for the Merger Consideration.[71]

- In their post-trial reply brief, the plaintiffs included an entire section titled "THE APPRAISAL STATUTE DOES NOT SHIELD DEFENDANTS FROM LIABILITY."[72] In that section, the plaintiffs explained that dissenting

---

[66] *See* Dkt. 192 ¶ 147 ("Whether Defendants are liable for damages to Co-Lead Plaintiffs and the Class and, if so, in what amount."); *id.* ¶ 160(d) ("Co-Lead Plaintiffs respectfully request that the Court enter a final judgment . . . [a]warding damages to the Class.").

[67] Dkt. 200 at 63–65.

[68] *Id.* at 54–62.

[69] Beach Tr. 572. Citations in the form "[Name] Tr." refer to witness testimony from the trial transcript.

[70] Dkt. 237 at 2, 68–69, 98–100.

[71] *Id.* at 99 n.527.

[72] Dkt. 246 at 7–11.

33

stockholders who sought appraisal were part of the class and that they had not received the Merger Consideration of $3.21.[73]

- The plaintiffs addressed the damages measure at some length in their post-trial reply brief because the defendants included a section in their reply/answering brief titled "Plaintiffs Improperly Seek Appraisal Damages."[74] In that section, the defendants recognized that the Fund had not received the Merger Consideration and therefore was arguing it should not face any offset for that amount.[75]

Under *Holifield*, the claim was preserved.

Lampert contends that the court's failure to address the Fund's damages in its post-trial opinion is dispositive. The court admittedly failed to address the offset issue. The court candidly acknowledged its error when the Fund sought to intervene.[76]

Lampert cites two occasions where, as he sees it, the Fund should have stated affirmatively that it intended to seek a fair price damages award without any offset for the Merger Consideration. The first was when the parties modified the class definition to include the appraisal claimants explicitly. Lampert contends that at that point, the Fund should have stated that "it believed itself to be differently situated than other class members or that it sought to receive different treatment than the

---

[73] *Id.*

[74] Dkt. 243 at 42–44.

[75] *Id.* at 42 ("Plaintiffs calculate damages to include the $3.21 merger consideration that appraisal petitioners never received . . . .").

[76] Dkt. 305 at 31.

rest of the class."[77] But that order was about defining the class, not the damages the class would receive. The Fund did not have to make its position clear at that point.

Second, Lampert contends that the plaintiffs and the Fund should have identified the issue more clearly in the pre-trial stipulation or in their pre-trial brief.[78] Contrary to Lampert's contention, parties do not have to spell out their damages theories in the pre-trial order. Nor do parties have to identify everything they intend to prove in a pre-trial brief. The pre-trial briefs substitute for opening statements. They can be highly detailed and cite extensively to the record (like a post-trial brief), or they can be thematic and set the stage for what the party contends the evidence will show. The plaintiffs' filings made clear that the Plenary Action plaintiffs and the Fund were seeking a compensatory damages award equal to the fair price of their shares. The filings did not need to discuss offsets.

Third, Lampert faults the Fund and the Plenary Action plaintiffs for raising the issue "in three footnotes in their Opening/Answering Post-Trial Brief."[79] As discussed above, the Fund and the Plenary Action plaintiffs sufficiently raised the issue at multiple points during the litigation. Demonstrating that Lampert was not prejudiced, his answering/reply brief devoted an entire section to the issue.[80]

---

[77] Opp. at 3.

[78] *Id.* (citation omitted).

[79] Opp. at 23; *see also* Dkt. 237 at 2 n.1, 68 n.385, 99 n.527.

[80] *Id.* at 42 ("Plaintiffs calculate damages to include the $3.21 merger consideration that appraisal petitioners never received . . . .").

The Plenary Action plaintiffs and the Fund properly preserved the question of whether the Fund should face an offset for consideration it never received. The court's failure to address that issue as part of an exceedingly long decision merely confirms that this judge is neither infallible nor omniscient. That is why the *Post-Trial Opinion* asked the parties to "submit a joint letter that either attaches an agreed-upon form of final order or identifies any issues that remain to be addressed and proposes a procedure for resolving them."[81] The Fund did just that. Waiver is not a basis for Lampert to avoid paying a damages award equal to the fair price of the shares.

### 6. The Statute of Limitations

Last, Lampert asserts in passing that the Fund sought to participate in the Plenary Action "even though the statute of limitations (applicable under the laches doctrine by analogy) had expired on Petitioners' ability to bring its own breach of fiduciary duty claim."[82] Because a pending class action tolls the statute of limitations for all putative members of the class,[83] this last argument fails as well.

## D. The Class Definition

The penultimate problem is the definition of the class. The court accepted the parties' stipulated definition which stated that stockholders who sought appraisal

---

[81] *Post-Trial Op.*, 309 A.3d at 541.

[82] Opp. at 3.

[83] *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." (internal quotation marks omitted)).

could be part of the class. That definition was the correct one under *Technicolor*, because there were many issues in the Plenary Action that warranted addressing on a class-wide basis, including the top-line damages entitlement. The fact that different class members could have different offsets does not defeat class certification, nor did it need to be addressed in the class certification order.

Now that the issue has been raised, the court can modify the class definition. For clarity, it makes sense to divide the class into two subclasses: one consisting of the non-dissenting shares that were converted into the right to receive the Merger Consideration, and the other consisting of the dissenting shares for which appraisal was sought. The only difference between the two subclasses is the offset.

## E.    The Settlement

The settlement presents a final challenge. Counsel in the Plenary Action and Lampert appear to have negotiated the terms on the assumption that the Fund only could receive incremental damages. That assumption proved incorrect. The court could offer its thoughts on the settlement now to provide guidance to the parties, but the settlement is scheduled for its own hearing at a later date. In the interim, the parties should have the first crack at responding to this decision.

## III.    CONCLUSION

The Fund can recover its full damages entitlement of $4.06 per share from Lampert. That is the amount that the Fund and all other stockholders should have received in the Merger if Lampert had not breached his duty of loyalty. When the Fund sought appraisal, the Fund did not know that Lampert breached his fiduciary duties when effectuating the Merger. The Fund can therefore opt out of the Appraisal

37

Proceeding and participate in the remedy provided in the Plenary Action. Unlike the other members of the class, the Fund has not received any amounts that warrant offsetting against the damages entitlement. The Fund is therefore entitled to recover $4.06 per share.